OFFICE OF THE UNITED STATES TRUSTEE

TIFFANY L. CARROLL
Acting United States Trustee
ELVINA ROFAEL (CA SBA 333919)
Trial Attorney
300 Ala Moana Boulevard, Room 4108
Honolulu, Hawaii 96850
Telephone: (808) 522-8155
ustpregion15.hi.ecf@usdoj.gov

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>Association of Apartment Owners of Kauai Beach Villas,<br><br><br>Debtor and Debtor-in-possession. | Case No. 25-01103 RJF<br>(Chapter 11, Subchapter V)<br><br>Hearing:<br>Date: January 5, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris |

### OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF DEBTOR'S CASH MANAGEMENT MOTION

Tiffany L. Carroll, the Acting United States Trustee for Region 15 (the "United States Trustee"), hereby files this objection and reservation of rights to final approval of debtor Association of Apartment Owners of Kauai Beach Villas's ("Debtor") *Emergency Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Continue to Use Existing Cash Management System, and (B) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks; (II) Determining Compliance with, or Granting a Waiver of, Certain Investment and Deposit Guidelines; and Granting Related Relief*

1

(Dkt. No. 9) (the "Motion"). In support of the Objection, the United States Trustee respectfully represents as follows:

## I.     PRELIMINARY STATEMENT

1. The Debtor seeks a variety of relief in the instant Motion. The Debtor seeks authority to maintain certain existing bank accounts currently held at financial institutions that are "authorized depositories." Authorized depositories are financial institutions that have entered into a Uniform Depository Agreement with the United States Trustee and participate in the United States Trustee's collateralization and monitoring program. This program is mandated by law and provides a convenient vehicle for debtors-in-possession to comply with the requirements of 11 U.S.C. § 345. The United States Trustee understands that the Debtor has begun the process of designating its existing bank account(s) to debtor-in-possession accounts and has no objection to giving the Debtor time to complete the designation.

2. The Debtor also seeks authority to use pre-petition business forms in the ordinary course of business. The United States Trustee does not object to such relief.

3. The United States Trustee's objection is focused on the Debtor's request for waiver of 11 U.S.C. § 345 with respect to certain investment accounts referenced in the Motion (the "Investment Accounts"). The Debtor seeks to continue managing the Investment Accounts free from the important safeguards required by 11 U.S.C. § 345. The Debtor requests that this Court enter an order leaving *potentially $2.6 million or more* in bankruptcy estate funds wholly unprotected.

4. Because the Debtor has not met its burden of demonstrating cause to waive the collateralization requirements of 11 U.S.C. § 345(b), the Motion should be denied. If the Court is inclined to grant the Motion on a final basis, the United States Trustee respectfully requests that the Final Order include the terms set forth in Paragraph 32 of this Objection.

## MEMORANDUM OF POINTS AND AUTHORITIES

### II. STATEMENT OF FACTS

**A. General Case Background**

5. On December 5, 2025 ("Petition Date"), the Debtor commenced the above-captioned case under Subchapter V of Chapter 11 of the Bankruptcy Code. Dkt. No. 1. The Debtor is currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

6. The United States Trustee appointed Wayne Mau as the subchapter v trustee. Dkt. No. 17.

7. The Debtor has not yet filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. *See* Case Docket *generally*. The Debtor's deadline to do so is December 26, 2025. Dkt. No. 36.

8. The meeting of creditors under 11 U.S.C. § 341 will be held on January 14, 2026. Dkt. No. 27.

9. According to the first day declaration of Larry D. Warner (the "Warner Declaration"), the Debtor is a registered not-for-profit corporation organized under the

3

laws of the State of Hawaii.[1]  Dkt. No. 11, p 3 of 42.  The Debtor was formed "pursuant to a Declaration of Horizontal Property Regime dated June 5, 1981."  (the "Declaration"). *Id*.  "The Declaration created a plan for development and establishment of a condominium for the resort known as Kauai Beach Villas."  *Id*., p 4 of 42.

10. A "Declaration of Covenants, Conditions and Restrictions for the PAHIO At Kauai Beach Villas" (the "Project") established a timeshare interval ownership plan within the condominium (the "Timeshare Declaration").  *Id*., p 5 of 42.  The Project consists of eight (8) separate three-story buildings, designated as buildings "A" - "H," containing a total of one hundred and fifty (150) apartments.  *Id*., pp 7-8 of 42.  "One hundred and five (105) of the one hundred and fifty (150) apartments are utilized as timeshares."  *Id*.

11. According to the Warner Declaration, the Debtor intends to use this bankruptcy proceeding to, among other things, market and sell the Project and terminate or amend the Declaration and/or Timeshare Declaration effective at or prior to closing of the sale of the Project.  *Id*., pp 24-25 of 42.

B. **Cash Management Motion**

12. As part of the Motion, the Debtor seeks authorization to (i) continue to use its existing cash management system, (ii) continue to use its pre-petition accounts and

---

[1] The Debtor is governed by a Board of Directors comprised of Larry D. Warner, President; Linda Kolstad, Vice President; George Keeney, Treasurer; Jim DeRose, Secretary; and Kevin Garner.  Dkt. No. 11, p 5 of 42.

business forms, and (iii) continue its investment policies without posting bonds pursuant to 11 U.S.C. § 345(b). *See* Dkt. No. 9, p 1 of 22.

13. As set forth in the Motion, the Debtor maintains 1 bank account and 2 investment accounts. Specifically, the Debtor holds:

   a. one (1) bank account at First Hawaiian Bank with a balance of $629,678 on the Petition Date.

   b. two (2) investment accounts at Merrill Lynch with a combined balance of more than $2.6 million on the Petition Date. The assets held in these accounts are invested in BLF FedFund.

*Id.*, pp 4-5 of 22.

14. First Hawaiian Bank is an authorized depository in the District of Hawaii. However, Merrill Lynch is not an authorized deposited in the District of Hawaii. *See* https://www.justice.gov/ust/media/1396031/dl?inline.

15. As set forth in the Motion, with respect to the First Hawaiian Bank account, the Debtor requests "it be given 45 days from the Petition Date to either (1) see if First Hawaiian Bank can re-designate the Checking Account as a debtor-in-possession account; and (2) if First Hawaiian Bank is unable to re-designate the Checking Account as a debtor-in-possession, allow the Debtor to open new debtor-in-possession accounts." Dkt. No. 9, p 10 of 22.

16. The Debtor requests authority to maintain the Investment Accounts at Merrill Lynch and granting "a waiver of the requirements to comply with section 345(b)."[2] *Id.*, p 11 of 22.

17. Following the "first day" hearing held on December 15, 2025, the Court approved the Motion on an interim basis. *See* Case Docket *generally*.

### III. OBJECTION

**A. Applicable Law**

18. Congress enacted 11 U.S.C. § 345 of the Bankruptcy Code in order to protect "money of the estate" during the pendency of a bankruptcy case. At the time it was enacted, 11 U.S.C. § 345 imposed significant, new fiduciary obligations on trustees and debtors-in-possession in bankruptcy to safeguard cash and other financial assets of the bankruptcy estate.

19. The sole purpose of 11 U.S.C. § 345 is to protect bankruptcy estate assets for the benefit of creditors. The legislative history is instructive on this point. "In order to *protect the creditors*, subsection (b) requires certain precautions against loss of the money so deposited or invested." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 333 (1977); S. Rep. No. 95-989, 95th Cong., 2nd Sess. 44 (1978) (emphasis added); *see also In re Columbia Gas Systems Inc.*, 33 F.3d 294, 301 (3d Cir. 1994) ("Ensuring the safety

---

[2] The Motion also asserts that the Investment Accounts comply with section 345(b). *See* Dkt. No. 9, pp 10-11 of 22. However, section 345(b) requires that the entity with whom the funds are invested post the bond. The Debtor has not provided proof that a bond was posted to protect the funds in the Investment Accounts. *See* Dkt. No. 9 *generally*.

6

of the bankruptcy funds has been the foremost goal"); *In re CWNevada LLC*, 602 B.R. 717, 744 (Bankr. D. Nev. 2019) ("[t]hose requirements are designed to ensure the safety of the funds held by a trustee or debtor in possession as a fiduciary of a bankruptcy estate"); *In re Lodging Enters., LLC*, 2024 WL 4252773, at *3 (Bankr. D. Kan. Sept. 18, 2024) ("When enacting § 345(b), Congress certainly was aware that bank failures are very rare and compliance could be costly, yet it still required that deposits in excess of the FDIC insured amount be collateralized or bonded without regard to the financial strength of the depository institution").

20. Specifically, section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank.

21. As stated by the Court in *In re Ditech Holding Corp.*, 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019):

> [t]he legislative purpose behind the enactment of section 345(b) was to ensure 'that the funds of a bankrupt that are obligated to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankrupt estate,' while also giving bankruptcy courts the flexibility to modify such requirement for 'just cause' (internal citations omitted).

22. Although 11 U.S.C. § 345(a) permits a debtor to, "make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money," it does not require the debtor to achieve

U.S. Bankruptcy Court - Hawaii   #25-01103   Dkt # 43   Filed   12/22/25   Page 7 of 12

maximum returns on estate funds. To the contrary, it requires the debtor to safeguard the estate's financial assets against losses.

23. The Debtor argues that section 345 should be waived because "the benefits of imposing the requirements of section 345(b) in this case are outweighed by the cost and disruption of opening new accounts and altering Debtor's investment practice." Dkt. No. 9, pp 11-12 of 22. However, this argument ignores the crux of section 345(a)—which is not to maximize gains through investment, but to preserve and protect bankruptcy estate assets for the benefit of creditors. Further, the Debtor fails to explain why its justification for an absolute waiver outweighs the section 345(b) account collateralization or bonding requirement, or the vital policy consideration that estate funds be held in a safe and prudent manner.

24. Having filed a voluntary chapter 11 case, the Debtor is required to comply with all applicable provisions of the Bankruptcy Code, including section 345. Under the statute, the Debtor may entrust bankruptcy estate monies only to financial institutions that: (i) post a surety bond; or (ii) post an "eligible obligation" pursuant to 31 U.S.C. § 9303.

25. As discussed below, the United States Trustee has an established method for chapter 11 debtors and their banks to comply with section 345. The Debtor may avail itself to the United States Trustee collateralization and monitoring program or it may pursue an alternate path to section 345 compliance. Either way, the statute is clear about the requirements and the Debtor's duties.

8

**B.     The United States Trustee Collateralization and Monitoring Program**

26.     Compliance with 11 U.S.C. § 345 is not burdensome.  To ensure that trustees and debtors-in-possession meet all of their obligations under section 345, the United States Trustee created a collateralization and monitoring program that is described in the United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," (the "Manual"), available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.  All FDIC-insured banks and financial institutions are eligible to participate in the program and become "Authorized Depositories."  Executing and returning a Uniform Depository Agreement with the United States Trustee is a prerequisite to participation in the program.

27.     Once a bank or financial institution becomes an Authorized Depository, the United States Trustee begins monitoring the institution's collateral pledged at the Federal Reserve Bank to ensure that appropriate levels of collateral are maintained.  Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit.  *See* Manual, §§ 7-1.1 and 7-1.2.1, pp. 1-2.  Authorized depositories have also agreed to make periodic reports so that the United States Trustee can monitor compliance.  *Id*., § 7-1.3.2, p. 5.  The United States Trustee also has procedures for monitoring surety bonds posted by banks or other financial institutions to the extent bonds are used.

U.S. Bankruptcy Court - Hawaii   #25-01103   Dkt # 43   Filed   12/22/25   Page 9 of 12

## C. The Debtor Has Not Established "Cause" to Waive 11 U.S.C. § 345

28. As previously stated, the Debtor bears the burden to prove that cause exists to waive the requirements of 11 U.S.C. § 345. *In re Ditech Holding Corp.*, 605 B.R. at 22 ("Debtors have failed to establish 'cause' to excuse them from collateralizing the (accounts) as required by section 345(b) of the Bankruptcy Code. The Motion is denied.").

29. The Bankruptcy Code does not define "cause" as that term is used in 11 U.S.C. § 345(b)(2). However, in determining whether cause exists under 11 U.S.C. § 345(b), courts have examined the totality of the circumstances. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *see also In re Ditech Holding Corp.*, 605 B.R. at 17; *In re Diocese of Buffalo, N.Y.*, 621 B.R. 91 (Bankr. WDNY, Oct. 30, 2020); *In re The Roman Catholic Diocese of Syracuse, New York*, Chap. 11 Case No.: 20-30663 (ECF Doc. 116). As part of this analysis, courts have considered the following factors:

1. The sophistication of the debtor's business;
2. The size of the debtor's business operations;
3. The amount of investments involved;
4. The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;
5. The complexity of the case;
6. The safeguards in place within the debtor's own business of insuring the safety of the funds;
7. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
8. The benefit to the debtor;
9. The harm, if any, to the estate; and
10. The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*See In re Serv. Merch. Co., Inc.*, 240 B.R. at 896.

30. The Debtor has not addressed some of the factors identified by the *Serv. Merch.* court, including most importantly, the Debtor's ability to reorganize if the financial institutions holding the Debtor's funds fail. Given the size of the funds in the Investment Accounts, which total more than $2.6 million, or approximately 80% of the Debtor's funds on the Petition Date, there appears to be a risk to the estate. Indeed, within the past few years, there have been substantial bank failures, including Silicon Valley Bank, Signature Bank, Citizen Bank, and First Republic Bank. *See* FDIC website at https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/silicon-valley.html.

31. Second, the Debtor argues that cause exists to excuse compliance with section 345(b) because "while Debtor's [Investment] Accounts are at Merrill Lynch which is not a UST Approved Depository, the cash component of the [Investment] Accounts is deposited with an institution insured by the FDIC. Dkt. No. 9, p 13 of 22. However, the Code requires that the funds be collateralized or secured by a bond if the funds exceed the FDIC insurance limit. *See* 11 U.S.C. § 345(b). It is the bonding or collateralization that protects estate funds for the benefit of creditors beyond the FDIC insurance limit. Therefore, regardless of which institution holds the Debtor's funds, the funds will not be protected to the same extent as funds held in debtor-in-possession accounts.

32. To the extent the Court is inclined to approve the Motion, the United States Trustee respectfully requests that the Final Order:

U.S. Bankruptcy Court - Hawaii    #25-01103    Dkt # 43    Filed 12/22/25    Page 11 of 12

a. require the Debtor to have its bank account at First Hawaiian Bank designated as a "Debtor in Possession" account by the institution within 45 days of entry of the Interim Order as requested by the Debtor in the Motion, and provide proof of same to the United States Trustee;

b. require the Debtor to attach account statements for the Investment Accounts to its monthly operating reports;

c. require the Debtor to sweep the cash and cash equivalent funds from the Investment Accounts to a debtor-in-possession account no later than 30 days following entry of the Final Order; and

d. prohibit the Debtor from opening new accounts unless such accounts are debtor-in-possession accounts at authorized depositories in the District of Hawaii.

## IV. CONCLUSION

33. The singular goal of 11 U.S.C. § 345 is to protect estate funds held by trustees and chapter 11 debtors-in-possession. Waiver of 11 U.S.C. § 345 is an extraordinary power that the Bankruptcy Court can exercise in appropriate circumstances but only upon good cause shown.

34. Based on the foregoing, the United States Trustee respectfully requests that the Court (i) sustain the Objection, and (ii) deny the Motion. The United States Trustee reserves all her rights.

DATE: San Diego, California, December 22, 2025

                                                          TIFFANY L. CARROLL
                                                          ACTING UNITED STATES TRUSTEE

                                                          By: /s/ *Elvina Rofael*
                                                               Elvina Rofael
                                                               Trial Attorney for the
                                                               United States Trustee